**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gary Ray BARBEE and Juanita Elizabeth Barbee, also known as Juanita Elizabeth Lopez–Ayon, Defendants–Appellants.**

**Nos. 90–2131, 90–2132, 90–2137.**

United States Court of Appeals, Tenth Circuit.

July 1, 1992.

---

Presiliano Torrez, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., and Tara C. Neda, Asst. U.S. Atty., on the brief), Albuquerque, N.M., for plaintiff-appellee.

Charles Louis Roberts, El Paso, Tex., for defendants-appellants.

Before LOGAN and BRORBY, Circuit Judges, and CARRIGAN, District Judge.*

LOGAN, Circuit Judge.

Defendants Gary Barbee and Juanita Barbee appeal their convictions, following a jury trial, for possession with intent to distribute less than 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and two counts of carrying or use of a firearm during a drug trafficking transaction, in violation of 18 U.S.C. § 924(c)(1).

On appeal defendants contend that the district court erred in (1) denying defendants' motion to suppress, (2) sustaining hearsay objections, (3) permitting opinion testimony of expert witnesses, (4) failing to submit a requested instruction regarding guilt by association and in allowing a "conscious avoidance of knowledge" instruction; and (5) that the defendants' convictions are not supported by sufficient evidence.

On an evening in February 1990, United States Border Patrol agents at the Truth or Consequences, New Mexico, checkpoint detected defendants' car traveling north on old Highway 52, a commonly used alien and drug smuggling route. When an agent put his high beam lights on defendants' car, he saw the passengers in the back seat crouch down out of sight. The agent proceeded to make an investigative stop and discovered that the back seat passengers were Mexican nationals who did not have immigration documents. The agent led defendants back to the Truth or Consequences checkpoint and arrested them for alien smuggling. At the checkpoint, a "sniffer" dog alerted on the trunk of defendants' car, and after agents removed the luggage from the car, the dog alerted on two specific pieces of luggage. In the luggage, agents found a semiautomatic machine pistol, large amounts of cash, and 35.9 grams of ninety-six percent pure cocaine. The agents also recovered a second weapon that defendant

* The Honorable Jim R. Carrigan, United States District Judge for the District of Colorado, sit-

Gary Barbee discarded out the window en route to the checkpoint.

I

A

■ Defendants argue that the agent's stop of their vehicle was without reasonable suspicion, and therefore any evidence obtained from the stop should be suppressed. We review the district court's findings at a suppression hearing applying a clearly erroneous standard. *United States v. Werking*, 915 F.2d 1404, 1406 (10th Cir.1990). "The standard of review for denial of a motion to suppress is clear—the findings of fact must be accepted by the court unless clearly erroneous. If findings are not made, this court must uphold the ruling if there is any reasonable view of the evidence to support it." *United States v. Cooper*, 733 F.2d 1360, 1364 (10th Cir.), *cert. denied*, 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984).

■ In determining whether reasonable suspicion exists to justify stopping a vehicle, a court must consider the totality of the circumstances. *United States v. Sokolow*, 490 U.S. 1, 8, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989); *United States v. Pollack*, 895 F.2d 686, 689–90 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 520, 112 L.Ed.2d 532 (1990). A court may appropriately "consider the characteristics of the area in which [agents] encounter a vehicle[,] [i]ts proximity to the border, the usual patterns of traffic on the particular road, and previous experience with alien traffic." *United States v. Brignoni-Ponce*, 422 U.S. 873, 884–85, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975). The behavior of persons in the car is also relevant. *Id.* at 885, 95 S.Ct. at 2582 (attempts to hide relevant); *United States v. Leyba*, 627 F.2d 1059, 1063 (10th Cir.), *cert. denied*, 449 U.S. 987, 101 S.Ct. 406, 66 L.Ed.2d 250 (1980). An agent's belief that passengers are " 'slouching down' to avoid detection"

ting by designation.

may create reasonable suspicion. *Leyba,* 627 F.2d at 1061, 1063.

In the instant case, the vehicle was traveling northbound on a highway known to be commonly used by alien and drug smugglers because it avoids the Truth or Consequences border checkpoint; the vehicle had out-of-state, Texas license plates; it was traveling in the evening, after dark; the time of the year was February, a month when typically little traffic travels that road; there were several occupants in the car; and when the agent's headlights lit up the car the passengers in the back seat crouched down. We conclude that these factors support a finding of reasonable suspicion to stop the vehicle. *See Pollack,* 895 F.2d at 690 (night travel, at hours when travel is unlikely on a particular road, on a "well-documented alien smuggling route," among other things, established reasonable suspicion); *Leyba,* 627 F.2d at 1063–64 (passengers apparently slouching to avoid detection, traffic patterns on particular highway and time of day established reasonable suspicion); *id.* at 1064 (out-of-state plates even from a nearby state are "entitled to some limited consideration because [the agent] did not recognize the vehicle as local traffic from the area.").

Our holding is not in conflict with *United States v. Monsisvais,* 907 F.2d 987 (10th Cir.1990), a case involving the same stretches of highways in which we reversed a district court's denial of a motion to suppress.[1] Although there are many similarities between the two cases, *Monsisvais* emphasized the inadequacy of the evidence in the record:

[T]he record is silent as to the characteristics of the area in which the vehicle was encountered, the proximity of the area to the border, the usual patterns of traffic on the particular road and information about recent or expected illegal immigrant activity in the area. Additionally, the record does not provide details of the agent's previous experience with alien traffic beyond Agent Goad's suggestions that "sometimes" alien smugglers use pickups with camper shells and "sometimes" they travel Highway 85. As such, the record fails to provide the "whole picture" necessary to justify the stopping of *this* heavily loaded pickup truck on *this* road at *this* time of day.

*Id.* at 992.

The record in the instant case could have been stronger but is not as incomplete as in *Monsisvais.* The record contains testimony and the qualifications of two different agents with experience in the area. They explained the location of the road,[2] the typical nature of the traffic at that time of year and that time of day on old Highway 52, and their experience with alien and drug smugglers. Also important is that the agent making the stop observed the passengers sinking down in an apparent effort to avoid detection; such behavior is suspicious conduct not clearly susceptible to unsuspicious interpretations, unlike passengers merely avoiding eye contact, turning their heads away from a light, or shielding their eyes.[3]

On the record before us, considering the passengers' conduct, the usual traffic pat-

---

1. *Monsisvais* focuses on Highway 85 while the instant case focuses on Highway 52. Both cases, however, involve the same intersection, where Highway 85 and Highway 52 meet. *See Monsisvais,* 907 F.2d at 990–91 & n. 1; VII R. 4.

2. At the suppression hearing the agent making the stop was questioned using a map to demonstrate the layout of the area.

3. We recognize that at least two cases from the Fifth Circuit have found that passengers slouching down does not create reasonable suspicion. *See United States v. Pacheco,* 617 F.2d 84, 86–87 (5th Cir.1980); *United States v. Lamas,* 608 F.2d 547, 549 (5th Cir.1979). Those cases, however, are dependent upon the totality of their specific facts, as are all reasonable suspicion cases. *Pacheco* involved daytime travel, in early summer, on a major, four-lane divided highway. 617 F.2d at 85–86. Also in *Pacheco,* the court found it worth noting that the aliens denied slouching. *Id.* at 86 n. 4. *Lamas* (a 2–1 decision) similarly involved daytime travel, in early fall, on a road "intersected at numerous points by other heavily trafficked highways." 608 F.2d at 548–49. *See also United States v. Garcia,* 732 F.2d 1221, 1224–25 (5th Cir.1984) (occupants' attempts to avoid detection, among other things, provided reasonable suspicion); *id.* at n. 1 (explaining and distinguishing *Lamas* and *Pacheco* ).

terns and the characteristics of old Highway 52, the investigative stop was proper.

## B

■ Defendants also argue that the search of their briefcase, which contained the cocaine, was without valid consent and improper. The government, however, does not base the validity of its search on consent, but rather argues that the existence of probable cause to search the vehicle and its contents made the warrantless search of the luggage reasonable under the automobile exception. In *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the Supreme Court held that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 825, 102 S.Ct. at 2173. Accordingly, officers with probable cause to search a lawfully stopped vehicle "may conduct a probing search of compartments and containers within the vehicle." *Id.* at 800, 102 S.Ct. at 2160.

■ The Supreme Court recently reaffirmed the validity of the automobile exception in *California v. Acevedo*, — U.S. ——, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). Police may search containers found in an automobile "without a warrant if their search is supported by probable cause." *Id.*, 111 S.Ct. at 1991. Defendants do not argue that the government did not

have probable cause to search the automobile or the luggage in the automobile for documents regarding transportation of illegal aliens. Moreover, when the trained narcotics detection dog alerted on the vehicle and specific pieces of luggage, the agents unquestionably had probable cause to search the luggage. *See, e.g., United States v. Morales–Zamora*, 914 F.2d 200, 205 (10th Cir.1990). Once the agents had probable cause to search the luggage carried in the vehicle, under the automobile exception no warrant was necessary. *Id.* at 205–06.[4] Thus, the district court properly denied defendants' motion to suppress.

## II

■ Defendants allege error in the district court's exclusion of testimony they offered to which the government objected as hearsay. We review evidentiary rulings under an abuse of discretion standard. *United States v. Alexander*, 849 F.2d 1293, 1301 (10th Cir.1988). Defendants assert that the government's hearsay objections should not have been sustained because the evidence was offered to show state of mind and not for the truth of the statements. This argument, however, was not raised in the district court and therefore is waived. Objections to evidentiary rulings must be raised in the district court to allow the judge to consider the objections and take corrective action. *See United States v. Mitchell*, 783 F.2d 971, 975–76 (10th Cir.),

---

4. Defendants argued at the suppression hearing that directing the dog to sniff the vehicle was improper because there was no reasonable suspicion of any drug-related activity. Our court directly addressed and decided this question in *Morales–Zamora*, which stated:

We now turn to the question raised by this appeal that we expressly reserved in *United States v. Stone*, 866 F.2d 359, 363 n. 2 (10th Cir.1989), namely, whether the police must have a reasonable suspicion of drug-related criminal activity before employing a narcotics-detection dog to sniff a vehicle already lawfully detained by the police. We hold that the dog sniff, under these circumstances, is not a "search," within the meaning of the fourth amendment and therefore an individualized reasonable suspicion of drug-related criminal activity is not required when the dog sniff is employed during a lawful seizure of the vehicle.

*Morales–Zamora*, 914 F.2d at 203; *accord United States v. Rodriguez–Morales*, 929 F.2d 780, 788–89 (1st Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992). Because the vehicle was already lawfully seized, the dog sniff was not an unlawful search.

Alternatively, at the suppression hearing, defendants argued that after the dog sniff probable cause only existed as to the identified luggage in the vehicle and not the vehicle. Accordingly, they argued, the automobile exception did not allow a warrantless search of the luggage. Even assuming probable cause existed only as to the luggage, the Supreme Court recently has held that the automobile exception allows warrantless searches of containers in automobiles, even when the probable cause extends only to the container. *California v. Acevedo*, — U.S. ——, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). Therefore, these grounds provide no basis for suppressing the government's evidence.

*cert. denied,* 479 U.S. 860, 107 S.Ct. 208, 93 L.Ed.2d 138 (1986). "Where a party has shifted his position on appeal and 'advances arguments available but not presented' to the trial court 'and where a party has had ample opportunity to make the point in the trial court in a timely manner' the issue will not be entertained on appeal." *Id.* at 976 (quoting *United States v. Fuentes,* 563 F.2d 527, 531 (2d Cir.), *cert. denied,* 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977)). When the government objected to the alleged hearsay, defendants acquiesced and did not argue any basis to the district court for allowing the testimony. We may still take "notice of plain errors affecting substantial rights although they were not brought to the attention of the court," Fed. R.Evid. 103(d); *see United States v. Nall,* 949 F.2d 301, 309 (10th Cir.1991), but we see no such error here.

### III

#### A

■ Defendants argue that the district court erred in allowing particular expert testimony. We review the ruling on admission of expert testimony under an abuse of discretion standard. *E.g., United States v. McDonald,* 933 F.2d 1519, 1522 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 270, 116 L.Ed.2d 222 (1991); *Sil–Flo, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1517 (10th Cir. 1990). Defendants complain of testimony by a drug enforcement agent, based upon his investigation following the arrest of defendants, that in his opinion "defendants were in possession of [cocaine, cash and guns, among other things] and were engaged in drug trafficking." VIII R. 228. Defendants assert that this was testimony on the ultimate issue, and its probative value did not outweigh its prejudicial effect. To preserve this issue for appellate review, defendants must have objected to the testimony on that basis in the district court. Fed.R.Evid. 103(a) states:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

> (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, *stating the specific ground of objection,* if the specific ground was not apparent from the context....

Fed.R.Evid. 103(a) (emphasis added). Defendants' only objection in the record to this evidence was based on foundation, and the court specifically overruled the objection on that ground. Defendants' assertions of error under Fed.R.Evid. 704, opinion on ultimate issue, and Fed.R.Evid. 403, prejudice, were not raised below and were waived. *See Mitchell,* 783 F.2d at 975–76. Therefore, we review only for plain error. *See* Fed.R.Evid. 103(d); *Nall,* 949 F.2d at 309.

■ There is a distinction between testimony on ultimate issues of fact and ultimate issues of law. Fed.R.Evid. 704 generally permits expert testimony on "an ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704.

> While testimony on ultimate facts is authorized under Rule 704, the committee's comments emphasize that testimony on ultimate questions of law is not favored. The basis for this distinction is that testimony on the ultimate factual questions aids the jury in reaching a verdict; testimony which articulates and applies the relevant law, however, circumvents the jury's decision-making function by telling it how to decide the case.

*Specht v. Jensen,* 853 F.2d 805, 808 (10th Cir.1988) (en banc), *cert. denied,* 488 U.S. 1008, 109 S.Ct. 792, 102 L.Ed.2d 783 (1989); *cf. United States v. Espinosa,* 827 F.2d 604, 612 (9th Cir.1987), *cert. denied,* 485 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988) ("A witness, however, may not give a direct opinion on the defendant's guilt or innocence.").

The witness' testimony that defendants were engaged in drug trafficking was an opinion regarding a factual issue. The agent explained that in reaching his opinion he relied on evidence that included the cocaine packaging, the types of weapons discovered, the hotel receipts and the long distance phone call activity from the hotels,

the rental car, and the cash found. The relevance of many of these factors, especially considered separately, is not likely to be understood by people without experience with drug traffickers; hence the witness' testimony was helpful to the jury. *See McDonald,* 933 F.2d at 1521–22; Fed. R.Evid. 702 (expert testimony allowed if helpful to jury).

The testimony also was not unduly prejudicial under Rule 403. The agent's one sentence summary undoubtedly had little impact in the context of the extensive explanation and discussion of the evidence supporting that conclusion. Also, the district court specifically instructed the jury that it could disregard the expert testimony "[i]f you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or that the opinion is outweighed by other evidence." I R. tab 52, jury instr. 9; *see also McDonald,* 933 F.2d at 1523 (noting jury was given instruction allowing it to accept or reject expert testimony). We conclude that allowing the expert testimony was not plain error affecting substantial rights of defendants.

### B

■ Defendants also object to admission of expert testimony by another drug enforcement agent regarding defendant Gary Barbee's drug use. Defendants assert that the witness was allowed to give expert testimony that Gary Barbee was not a drug addict. Although the government's question to the witness attempted to elicit such a response, the agent testified only that "[t]hat night, I didn't think he was on any type of drugs." VIII R. 146. This limited testimony did not address defendant Gary Barbee's alleged addiction and defendants' foundation objection was not well taken. The agent's experience with drug users and his training are established in the record. This experience qualified the agent to testify whether defendant Gary Barbee appeared to be on drugs on a specific evening when the agent personally

observed him. Therefore, the district court did not err in permitting the testimony.

### IV

### A

■ Next, defendants allege errors in the jury instructions. Defendant Juanita Barbee asserts that the district court should have given a requested instruction prohibiting a verdict of guilty based merely on her association with Gary Barbee.

In order to appeal the propriety of a given jury instruction or the refusal to give a suggested jury instruction, a defendant must make a specific objection in the district court. Fed.R.Crim.P. 30 expressly provides that "[n]o party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, *stating distinctly the matter to which that party objects and the grounds of the objection."* *Id.* (emphasis added). Absent an appropriate objection, we review the record only for plain error. Fed. R.Crim.P. 52(b); *see also United States v. de Francisco–Lopez,* 939 F.2d 1405, 1408 n. 1 (10th Cir.1991).

The record shows that defendant Juanita Barbee's attorney offered the no guilt by association instruction, and the judge replied: "I have covered that in another instruction which says they are to consider each defendant's case separately, and mere presence—" at which point defendant Juanita Barbee's attorney interrupted and moved on to another jury instruction. X R. 10–11; *see also* XI R. 24. Counsel for Juanita Barbee did not object in the record or state a ground for an objection; therefore, we review for plain error. Regardless of the standard of review, however, denial of this instruction was not error. "As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 887, 99 L.Ed.2d 54 (1988). The judge, however, has discretion in determining the exact

form the instruction will take, *see* 2 Steven A. Childress & Martha S. Davis, *Standards of Review* § 11.29, at 140–41 (1986); *see also de Francisco–Lopez*, 939 F.2d at 1409 ("We examine jury instructions as a whole to evaluate their adequacy...."). As the district court accurately noted, the no guilt by association instruction was already covered in substance in other jury instructions. *See* I R. tab 52, jury instrs. 12 & 21.

### B

■ Defendants argue that the district court erred when it gave the "conscious avoidance of knowledge" or "deliberate ignorance" instruction. We review this action under a de novo standard. *de Francisco–Lopez*, 939 F.2d at 1409. Although this issue is argued in both defendants' briefs, only defendant Juanita Barbee objected to the instruction at the district court, and the instruction was potentially prejudicial only to her. Gary Barbee admitted actual knowledge of the cocaine and weapons and his knowledge was not an issue. Thus, any error in giving the instruction was clearly harmless to Gary Barbee.

This court has approved the use of a deliberate indifference instruction in some circumstances. *See, e.g., United States v. Ochoa–Fabian*, 935 F.2d 1139, 1141 (10th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). A properly framed instruction "does not authorize conviction of one who in fact does not have guilty knowledge." *United States v. Manriguez Arbizo*, 833 F.2d 244, 248 (10th Cir. 1987). The deliberate ignorance instruction, however, "is rarely appropriate ... because it is a rare occasion when the prosecution can present evidence that the defendant deliberately avoided knowledge. We emphasize that the deliberate ignorance instruction should be given only when evidence has been presented showing the defendant purposely contrived to avoid learning the truth." *de Francisco–Lopez*, 939 F.2d at 1409 (citations omitted). "[T]he deliberate ignorance instruction must not be tendered to the jury unless evidence, circumstantial or direct, has been admitted

to show that the defendant denies knowledge of the operant fact and the defendant's conduct includes deliberate acts to avoid actual knowledge of that operant fact." *Id.* at 1411.

We hold that it was error for the court to give the deliberate ignorance instruction in the instant case. Although defendant Juanita Barbee denied knowledge of the contents of the metal briefcase, the gun in the trunk, and the second gun under the driver's seat of the car, the record does not suggest any evidence of deliberate acts to avoid actual knowledge.

■ Nevertheless, we must determine whether giving the instruction was harmless error. *See Arizona v. Fulminante*, — U.S. —, 111 S.Ct. 1246, 1263–65, 113 L.Ed.2d 302 (1991); *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). This requires us to look at the precise wording of the instruction given, whether the other instructions negate any adverse effects of the erroneous deliberate indifference instruction, and the quantum of evidence against the defendant. In the instant case examination of each of these factors supports holding the error to be harmless.

The concern with a deliberate indifference instruction is that it may lead a jury to convict a defendant for his or her negligence instead of for willfulness or intent. *See* Ira P. Robbins, *The Ostrich Instruction: Deliberate Ignorance as a Criminal Mens Rea*, J.Crim.L. & Criminology 191, 225 & n. 231, 231 (1990). For example, the instruction given in *de Francisco–Lopez* stated:

> The defendant's knowledge may be established by proof that the defendant was aware of a high probability that the materials were narcotics unless despite this high probability the facts show that the defendant actually believed that the materials were not narcotics. Knowledge that the material[s] were narcotics may be inferred from the circumstances that would convince an average ordinary person that this is the fact.

*Id.* at 1411. Conspicuously absent from that instruction is any requirement of will-

fulness or intent. Also, the sentence using the words "average ordinary people" standing alone is dangerously close to a negligence standard.

Not all deliberate indifference instructions share the same potential prejudicial effect, however. The instruction given in the instant case, which we quote, is quite different from the instruction given in *de Francisco-Lopez:*

> The element of knowledge may be satisfied by inferences drawn from proof that a defendant *deliberately* closed his eyes to what would otherwise have been obvious to him. A finding beyond reasonable doubt of a *conscious* purpose to avoid enlightenment would permit an inference of knowledge. Stated another way, a defendant's knowledge of a fact may be inferred from *willful* blindness to the existence of the fact. Thus, knowledge is established if a defendant is aware of a high probability of the existence of an unlawful activity, unless he actually believes such activity does not exist.

> It is entirely up to you as to whether you find any *deliberate* closing of the eyes, and the inference to be drawn from any such evidence. A showing of *negligence or mistake* is *not sufficient* to support a finding of willfulness or knowledge.

I R. tab 52, jury instr. 19 (emphasis added). In light of the emphasis on deliberateness and willfulness and the clear, specific direction that negligence or mistake could not sustain a finding of knowledge under this instruction, there was little risk that this jury convicted Juanita Barbee using a negligence or recklessness standard. *See Manriguez Arbizo,* 833 F.2d at 248 (finding instruction with language nearly identical to instruction in the instant case "does not authorize conviction of one who in fact does not have guilty knowledge"); *United States v. Littlefield,* 840 F.2d 143, 148 & n. 3 (1st Cir.) (although evidence did not support "willful blindness" instruction, instruction was harmless error because it specifically informed the jury that negligence was insufficient to support guilt), *cert. denied,*

488 U.S. 860, 109 S.Ct. 155, 102 L.Ed.2d 126 (1988).

The other instructions given in the instant case also support a finding of harmlessness. The deliberate ignorance instruction could taint a finding of only the knowledge element of the counts of conviction. *See* I R. tab 52, instr. 19 ("The element of knowledge may be satisfied by . . . ."). The count I conviction must stand regardless of the deliberate indifference instruction, because that count contained in addition to the knowledge requirement a separate intent requirement that prevented the jury from convicting based on a negligence standard. The jury instructions on this count required the jury to find: *"First:* That the Defendant knowingly and willfully possessed Cocaine as charged; and *Second:* That the Defendant possessed the Cocaine with the intent to distribute it." I R. tab 52, instr. 11; *see also id.* instr. 10 (language of indictment states defendants "knowingly and intentionally did possess with intent to distribute less than 500 grams of Cocaine"). The court also instructed that "you may not find any Defendant guilty unless you find beyond a reasonable doubt that *every* element of the offenses as defined in these instructions was committed by some person or persons, and that the Defendant *willfully* participated in its commission." I R. tab 52, instr. 12 (emphasis added). The instructions defined "willfully" to mean "the act was committed voluntarily and purposely, with the specific intent to do something the law forbids." I R. tab 52, instr. 20. On the facts of this case, the jury could not have found that defendant Juanita Barbee willfully possessed the cocaine and had an intent to distribute it without also finding actual knowledge of the cocaine.

In a somewhat similar case, *United States v. Markopoulos,* 848 F.2d 1036 (10th Cir.1988), we found that although the deliberate indifference instruction should not have been given, reversal was not required because the defendant was convicted of conspiracy, which required that he and his codefendants "willfully became members of the conspiracy." *Id.* at 1040. We found the willful requirement would not have per-

mitted conviction based on what the defendant "should have known." *Id.* at 1040 & n. 5. In *Markopoulos,* willfully was defined in the jury instructions by the same jury instruction used in the instant case. *See id.* at n. 5; I R. tab 52, instr. 20.

The jury also was specifically instructed that it must find proof of specific intent in order to convict. I R. tab 52, instr. 15. The jury was instructed that "[t]o establish specific intent the government must prove that the defendant knowingly did an act which the law forbids, purposely intending to violate the law." *Id.* The jury had to find that Juanita Barbee purposely intended to violate the law. We do not see any latitude allowing the jury to convict on a negligence standard, when all the instructions are considered as a whole.

Finally, the evidence of Juanita Barbee's actual knowledge of the cocaine and the guns was substantial and only contradicted by her own and her husband Gary's testimony. Both defendants had a strong motive to claim that she had no actual knowledge, and the jury clearly found their testimony not credible. Juanita Barbee, a Mexican national, acknowledged that she lied about her citizenship to the agent at the time of the initial stop. Gary Barbee threw one gun out the car window on a winter evening while Juanita Barbee was driving the car, but Juanita testified that she did not know about the gun under the front seat nor did she know that Gary threw it out of the car. Juanita Barbee acknowledged that she spent substantial amounts of money, and she knew that her husband always had money. She denied that she kept any of her belongings in the briefcase containing the cocaine, but other testimony and contents of the briefcase presented at trial demonstrated beyond a reasonable doubt that the briefcase contained a number of her personal belongings. Evidence also was presented that Juanita Barbee asked an agent to get her cigarettes from the briefcase for her, further demonstrating her knowledge and control over the contents of the briefcase. The evidence revealed that the black nylon tote bag containing one of the firearms also contained a women's change purse containing Mexican money. Testimony established that Juanita Barbee, on the evening of her arrest, had asked about the whereabouts of the illegal aliens who had been discovered with them. When the agent told her the agents had let them go, she responded, "Good. They have nothing to do with us." VIII R. 191. Based on the evidence presented a reasonable jury would be compelled to find that Juanita Barbee had knowledge of the cocaine and guns. This overwhelming evidence thus also supports our holding that the giving of the deliberate indifference instruction was harmless error.

## V

Finally, defendants contend that the evidence was insufficient to prove that they possessed cocaine with intent to distribute or that they used firearms in the offense. Gary Barbee argues that he was merely a cocaine addict, not a cocaine trafficker. Juanita Barbee argues that she was merely married to a cocaine addict, and that even if Gary Barbee was a cocaine trafficker she did not have knowledge of his trafficking activity and did not participate in it.

"Evidence is considered sufficient to support a criminal conviction if, when viewed in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Culpepper,* 834 F.2d 879, 881 (10th Cir.1987). Applying this standard, we must uphold defendants' convictions.

The undisputed evidence showed that Gary Barbee's briefcase contained 35.9 grams of ninety-six percent pure cocaine, and Gary Barbee conceded ownership of the cocaine. There was testimony that the amount of cocaine, its purity, and method of packaging indicated cocaine for distribution and not for personal use. The undisputed evidence also shows that defendants possessed large amounts of cash including $376 on Gary Barbee, $291 on Juanita Barbee, $1,334 in Gary Barbee's wallet, and

bundles of cash amounting to $16,105[5] in the briefcase containing the cocaine. Defendants were traveling with a loaded M–11 semi-automatic pistol and a loaded P–38 semi-automatic pistol—firearms commonly used by drug traffickers. Defendants used a rented vehicle, stayed in nice hotels, made an unusually high number of phone calls, and spent substantial sums of money. Testimony established that these factors are indicative of drug trafficking. And, as detailed in the previous section, the evidence supports the conclusion that Juanita Barbee knew about the weapons and cocaine, was in joint possession of the cocaine and cash, and enjoyed the profits of the trafficking. In sum, the evidence supports the convictions.

AFFIRMED.

---

**5.** The record in another portion of the transcript shows this amount as $16,150. *See* VIII R. 226.