**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 28 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　　Plaintiff - Appellee,

v.

JUAN GOMEZ-ASCENCIO,

　　　Defendant - Appellant.

No. 96-6210

(W.D. Oklahoma)

(D.C. No. CR-96-32-A)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, **HENRY**, and **BRISCOE**, Circuit Judges.

　　　After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

　　　Juan Gomez-Ascencio entered a conditional guilty plea to one count of transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).  He now appeals the district court's denial of his motion to suppress evidence obtained after Oklahoma

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

City police officers stopped him for a traffic violation. Mr. Gomez-Ascencio contends that he was unlawfully detained and that his consent to search and further detention were invalid because the actions of the officers subsequent to the traffic stop were not reasonably related to the circumstances justifying the stop. We affirm.

## BACKGROUND

At approximately 10:15 p.m. on January 29, 1996, Officers Jesse Trillo and Damon Alexander of the Oklahoma City Police Department observed Mr. Gomez-Ascencio's van traveling north on Interstate 35. The van was straddling the solid white line on the shoulder of the road, and weaving between the right lane and shoulder. The van also appeared heavily laden, with the back end lower than the front end. Concerned that the driver could be tired or under the influence of alcohol or drugs, the officers stopped the van. Officer Trillo approached the van on the passenger's side, advised Mr. Gomez-Ascencio of the nature of the stop, and asked for his driver's license in Spanish. R. Vol. II at 5-7.

Using a flashlight, Officer Trillo looked inside the van and noticed several apparently Hispanic people "huddled underneath blankets" in the back. Id. at 9-10. During the suppression hearing, when asked at what point he realized Mr. Gomez-Ascencio may have illegal aliens as passengers, Officer Trillo testified: "Pretty much just a few minutes within the traffic stop. I saw everybody huddled under blankets. There

- 2 -

appeared to not be enough seating for everyone. At that point that arose my suspicions." Id. at 17. Moreover, approximately two weeks prior to this traffic stop, Officer Trillo participated in a similar stop involving a van full of illegal aliens. Id. at 17.

Officer Trillo took Mr. Gomez-Ascencio's Illinois driver's license to Officer Alexander in the patrol car, in order to check the license and any outstanding warrants or traffic tickets. While Officer Alexander checked defendant's license, Officer Trillo returned to the van and asked Mr. Gomez-Ascencio to step out and move to the back of the van. Officer Trillo pat searched Mr. Gomez-Ascencio, and asked him about his travel plans and his relationship to the other people in the van. Mr. Gomez-Ascencio explained that he was traveling home to the Chicago area and that the people in the van were friends he was taking with him. Officer Trillo then returned to the front of the van to talk with the other passengers and determine whether they would confirm Mr. Gomez-Ascencio's story. Officer Trillo questioned the passengers in Spanish, who largely did not respond to his questions, simply mumbling and remaining huddled under the blankets. They claimed not to know Gomez-Ascencio, and only referred to him as "amigo." Id. at 12, 15.

The computer check revealed that Mr. Gomez-Ascencio's license was valid, but that he had a prior arrest for smuggling illegal aliens. Officer Trillo then asked for and received Mr. Gomez-Ascencio's consent to search the van. Officer Trillo asked the passengers to get out of the van, pat searched each one, and requested identification. There were fourteen undocumented aliens in the van. Id. at 12-15, 50. The officers

quickly searched the van, asked the passengers to return to the van, and contacted the

Immigration and Naturalization Service (INS). The officers transported Gomez-Ascencio

and the passengers to the INS office, where they relinquished custody at approximately

11:20 p.m. Id. at 16, 49. At 10:30 the following morning, INS special agent Richard

Garza met with Mr. Gomez-Ascencio and advised him of his Miranda rights. He waived

his rights and admitted to transporting illegal aliens. Id. at 51-57.

## DISCUSSION

On appeal from the denial of a motion to suppress, we view the evidence in the

light most favorable to the government and we review the district court's factual findings

only for clear error. United States v. Botero-Ospina, 71 F.3d 783, 785 (10th Cir. 1995)

(en banc), cert. denied, 116 S. Ct. 2529 (1996). We review de novo, however, whether

the officers had reasonable, articulable suspicion of criminal activity at the time of the

seizure. United States v. Shareef, 100 F.3d 1491, 1499 (10th Cir. 1996); United States v.

Carhee, 27 F.3d 1493, 1497 (10th Cir. 1994).

Mr. Gomez-Ascencio concedes on appeal that the observed traffic violation was a

sufficient reason to stop him. Appellant's Br. at 8 (citing Botero-Ospina, 71 F.3d at 787).

He argues, however, that the arresting officers violated his Fourth Amendment rights

because their actions subsequent to the traffic stop were not reasonably related to the

circumstances justifying the stop, resulting in his unlawful detention and an invalid

- 4 -

consent to search and further detain him.  Id. at 7.  Specifically, he argues that the officers should have allowed him to proceed once he provided proof of license and registration, "without being questioned further and without questioning the passengers."  Id. at 9-10. He urges that his statement to INS special agent Garza, and any evidence gathered as a result of his allegedly unlawful seizure should have been suppressed.  Id. at 10.

Both the magistrate judge and the district court addressed these contentions, and we substantially adopt their reasoning and conclusions.  While an investigative detention must "last no longer than is necessary to effectuate the purpose of the stop," Florida v. Royer, 460 U.S. 491, 500 (1983), an officer may retain a driver's license and detain the driver for further questioning if the officer acquires an objectively reasonable and articulable suspicion that the driver is engaged in illegal activity.  United States v. Sandoval, 29 F.3d 537, 540 (10th Cir. 1994).  And, it is permissible for an officer conducting a routine traffic stop to perform a computer check on the driver's license and registration.  United States v. McRae, 81 F.3d 1528, 1536 n.6 (10th Cir. 1996).

In the context of and during the traffic stop, Officer Trillo, who had recent experience with a similar arrest for alien smuggling, noticed the van was filled with apparently Hispanic people, huddled under blankets, and without proper seats.  The passengers evaded Officer Trillo's basic questions, and claimed to know Mr. Gomez-Ascencio only as "amigo" even though Gomez-Ascencio said they were his friends.[1]  See

---

[1]Officer Trillo testified:  "I had asked [the passengers] earlier, 'Who is this guy driving
(continued...)

e.g., United States v. Kopp, 45 F.3d 1450, 1453-54 (10th Cir.), cert. denied, 115 S. Ct. 1721 (1995) (holding inconsistent stories from passenger and driver, among other factors, supported continued detention); United States v. Barbee, 968 F.2d 1026, 1028 (10th Cir. 1992) (holding passengers' behavior may create reasonable suspicion of illegal activity). Furthermore, a routine check of Mr. Gomez-Ascencio's license revealed his prior arrest for alien smuggling. McRae, 81 F.3d at 1535 n.5 (stating prior arrest record can be a factor, among others, giving rise to articulable suspicion).

Considering the totality of these circumstances as we must, United States v. Fernandez, 18 F.3d 874, 878 (10th Cir. 1994), the officers had an objectively reasonable and articulable suspicion to support the detention for further questioning and the request for consent to search. The district court's finding that Mr. Gomez-Ascencio gave his consent freely and voluntarily is not clearly erroneous.[2]

For the foregoing reasons, and those ably set forth by the district court and magistrate judge, we AFFIRM the district court's denial of Mr. Gomez-Ascencio's motion to suppress evidence obtained during the detention and consensual search.

---

[1](...continued)
the van?' They said, 'I don't know. We just call him Amigo.'" R. Vol II at 15.

[2]Mr. Gomez-Ascencio argues that his confession to INS Agent Garza should be suppressed because there "was not a sufficient break, temporally or in proximity, adequate to purge the taint of the Fourth Amendment violation," and that the "statement should have been suppressed as fruit of Mr. Gomez's unlawful seizure." Appellant's Br. at 10. Because we affirm the district court's holding that there was no Fourth Amendment violation, we need not reach Mr. Gomez-Ascencio's argument concerning the confession.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge