**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Victor MIRANDA–ENRIQUEZ,
Defendant–Appellant.**

No. 89–2191.

United States Court of Appeals,
Tenth Circuit.

Aug. 12, 1991.

Michael G. Katz, Federal Public Defender, and Susan L. Foreman, Asst. Federal Public Defender, Denver, Colo., for defendant-appellant.

William L. Lutz, U.S. Atty., and Don J. Svet, First Asst. U.S. Atty., Albuquerque, N.M., for plaintiff-appellee.

Before McKAY, SEYMOUR, and EBEL, Circuit Judges

McKAY, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

Defendant-appellant Victor Miranda–Enriquez appeals from his conviction for illegal possession with intent to distribute marijuana based on the district court's denial of his motion to suppress evidence obtained during a stop by a border patrol agent.

### Background

At approximately 9:00 p.m. on February 15, 1989, a sensor connected to an immigration checkpoint on I–25 near Truth or Consequences, New Mexico indicated the presence of vehicle travelling north on New Mexico Highway 52. Border patrol agent Robert Johnston responded to the sensor alert by driving to the intersection of Highway 52, I–25 and U.S. Highway 85 and parking perpendicular to Highway 52 with his car headlights shining into the intersection. Agent Johnston testified that from his experience at the nearby I–25 checkpoint he knew that Highway 52 was commonly used by illegal alien smugglers to avoid the checkpoint and that smugglers were most likely to be on the highway in the nighttime hours. He had also made several hundred arrests of smugglers as a result of alerts from the Highway 52 sensor. The government did not put on any evidence which would inform us of how many innocent persons he stopped during the same period.

Shortly after Agent Johnston parked, a 1984 Datsun Nissan Sentra travelling north on Highway 52 approached the intersection. As the car came to a stop at the stop sign, it was illuminated by the headlights of Agent Johnston's car. Agent Johnston noted that the car was heavily covered with fine powdery dust similar to the type of dust found on vehicles entering Highway 52 from a dirt road near Upham, New Mexico, that was also a well-documented smuggling route. He also admitted that the same dust is found in and around Highway 52 and that highway is also extensively traveled by tourists visiting a nearby lake and that the same dust is often seen on their cars. In addition, Agent Johnston saw several undefined shapes in the rear seat of the car which turned out to be child restraint seats. He testified that the car's driver, Mr. Miranda–Enriquez, appeared curiously "frozen" and did not look left or right, *i.e.*, into the headlights of Agent Johnston's border patrol car, before turning onto U.S. Highway 85. Finally, as the car turned, Agent Johnston noted that it had Arizona license plates.

Agent Johnston stopped the car approximately one mile from the intersection. After an exchange with the driver, the officer testified that he received permission to open the trunk where he discovered marijuana. Defendant denied that he gave consent.

A federal grand jury subsequently indicted Mr. Miranda–Enriquez for possession with intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1). Mr. Miranda–Enriquez filed a motion to suppress that challenged the validity of both Agent Johnston's stop of his vehicle and his search of the car trunk. The district court denied the motion

after an evidentiary hearing, holding that the stop was proper, that Mr. Miranda–Enriquez had consented to Agent Johnston searching the trunk and that even if Mr. Miranda–Enriquez had not consented, Agent Johnston had probable cause for conducting the search. Rec., vol. III, at 53–54. Mr. Miranda–Enriquez then entered a guilty plea to the indictment conditioned on his right to appeal the denial of his motion to suppress. After being sentenced to 37 months imprisonment, Mr. Miranda–Enriquez timely appealed from the judgment recording that sentence.

### Discussion

The controlling issue in this case is defendant's claim that the initial stop was unlawful. If it was, there clearly was insufficient attenuation between the stop and the search to purge it of the prior illegality.

Under the government's view of this case, every out-of-state driver traveling on New Mexico Highway 52 at 9:00 p.m. with a dusty car who does not turn her or his head to look for oncoming cars at the intersection of Highway 52, I–25, and U.S. Highway 85, 98 miles from the Mexican border, can be stopped and questioned by the Border Patrol. We conclude that this proposition cannot be reconciled with the protections of the Fourth Amendment to the Constitution of the United States.

"The ultimate determination of reasonableness under the Fourth Amendment is ... a conclusion of law that we review de novo." *United States v. McKinnell,* 888 F.2d 669, 672 (10th Cir.1989).

"[A]n investigatory stop is justified when an officer 'observes unusual conduct which leads him reasonably to conclude in the light of his experience that criminal activity may be afoot.'"
*United States v. Monsisvais,* 907 F.2d 987, 990 (10th Cir.1990) (quoting *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968)).

"In determining whether there is reasonable suspicion to stop a car in the border area, officers may consider any number of factors, including: (1) characteristics of the area in which the vehicle is encountered; (2) the proximity of the area to the border; (3) the usual patterns of traffic on the particular road; (4) the previous experience of the agent with alien traffic; (5) information about recent illegal border crossings in the area; (6) the driver's behavior, including any obvious attempts to evade officers; (7) aspects of the vehicle, such as a station wagon with concealed compartments; and (8) the appearance that the vehicle is heavily loaded."
*Id.* at 990; *see United States v. Pollack,* 895 F.2d 686, 690 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 520, 112 L.Ed.2d 532 (1990).

"Terms like 'articulable reasons' and 'founded suspicion' are not self-defining; they fall short of providing clear guidance dispositive of the myriad factual situations that arise. But the essence of all that has been written is that the totality of the circumstances—the whole picture—must be taken into account.

Based upon that whole picture the detaining officers must have a particularized and *objective* basis for suspecting the particular person stopped of *criminal* activity."
*Monsisvais,* 907 F.2d at 990 (citing *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981)) (emphasis in original). In analyzing the picture as a whole, it must be remembered that "not every suspicion that is 'articulable' is reasonable." *Id.* at 992.

The testimony of Agent Johnston established the following facts which we have previously summarized: Mr. Miranda–Enriquez was driving northwest on New Mexico Highway 52 near Truth or Consequences, which is 98 miles from the Mexican border, at 9:00 p.m. on February 15, 1989, in a 1984 Datsun Nissan Sentra. The Sentra displayed Arizona license plates and its rear windows and license plate were covered with dust. Agent Johnston was working at the Border Patrol checkpoint on I–25. There is a dirt road connecting with Highway 52 used by numerous vehicles containing smugglers to avoid the Las Cruces border patrol units, and which con-

tains dust similar to that found on Mr. Miranda–Enriquez's car. Rec., vol. III, at 12. Highway 52 also is traveled extensively by tourists visiting a nearby lake. *Id.* at 24. There are dirt roads around the lake, and the dust on Mr. Miranda–Enriquez's car was of the same type as found on some of these dirt roads. *Id.* at 23. It is not unusual to see people driving from the lake with dust on their cars. *Id.* at 29.

After Mr. Miranda–Enriquez tripped the sensor located on Highway 52, Agent Johnston drove to the intersection of Highway 85 and Highway 52 and parked so that his headlights could shine perpendicularly toward the stop sign on Highway 52. Mr. Miranda–Enriquez stopped at the intersection, did not turn his head, and proceeded south onto Highway 85. It is possible to survey the intersection for oncoming cars prior to stopping at this intersection, although it was Agent Johnston's opinion that "when you get up to the stop sign, you have to look." *Id.* at 31. Agent Johnston has worked at this checkpoint for 11 years, and has made two or three hundred arrests on Highway 52. At 3:00 a.m., the chances are "probably" fifty-fifty that a car traveling on Highway 52 will contain a smuggler, although Agent Johnston did not know what the likelihood would be that a car would contain a smuggler at 9:00 p.m. *Id.* at 29–30. Agent Johnston would have stopped Mr. Miranda–Enriquez even if his car had displayed New Mexico license plates, or if there had been no dust on his car. *Id.* at 32–33.

There was no testimony that Agent Johnston had received word that there had been recent illegal border crossings in the area, nor was there testimony that Agent Johnston thought that the Sentra contained concealed compartments or that it appeared to be heavily loaded. Mr. Miranda–Enriquez argues that all these facts and the rational inferences flowing from them do not amount to a basis for a reasonable suspicion to stop him for questioning under the Fourth Amendment. We agree. In fact, our decision in *United States v. Monsisvais* compels this conclusion.

In *Monsisvais*, we held insufficient to support a reasonable suspicion factors similar to those surrounding the stop of Mr. Miranda–Enriquez. In that case, the stop occurred after a sensor alert on Highway 85, also at a point in close proximity to Truth or Consequences. The vehicle stopped was a pickup truck with a camper shell riding extremely low and traveling at 7:30 p.m. in February with Arizona license plates. Both parties agreed that Highway 85 could be used to bypass the checkpoint at Truth or Consequences. We found, however, that these facts failed to show "a basis for concluding that a vehicle's presence on Highway 85 at 7:30 p.m. is at all unusual, much less that it is suggestive of criminal conduct." 907 F.2d at 990–91. We also said the fact that the vehicle displayed Arizona plates was an insufficient ground upon which to conclude that it was any more likely to be transporting smugglers near Truth or Consequences than vehicles from other surrounding states. *Id.* at 991. We placed significance on the fact that the record was barren of information describing the legitimate traffic that might be expected to use Highway 85 during that time of day, and we were not willing to assume that its sole utility was to evade checkpoints. Here, on the other hand, we have direct evidence from the Agent himself that it is not unusual to encounter dust covered vehicles coming from the lake on Highway 25. Significantly, when questioned about the likelihood of smugglers on the road at 9:00 p.m., the Agent testified: "I don't know what the exact percentage would be." Rec., vol. III, at 29. Nevertheless, he admitted that "after dark we try to check as many as we can there." *Id.* at 30. Unlike Mr. Miranda–Enriquez's car, the vehicle in *Monsisvais* was heavily weighed down in the rear. In addition, there is much more evidence in our record than in *Monsisvais* to show that the route upon which Mr. Miranda–Enriquez traveled was legitimately used by tourists departing from the nearby lake. We agree with this court's recent admonition in *United States v. Sanders*, 937 F.2d 1495, 1501 (10th Cir. 1991), that "[t]o claim suspicious circumstances based solely on time of day [2:30

a.m.] an individual chooses to travel risks labeling all who travel on what some feel is an unusual hour as suspicious." Finally, we attach little significance to the fact that Mr. Miranda–Enriquez did not turn his head at the intersection because it was possible to see oncoming cars before he reached the stop sign. Indeed, as for staring into headlights of a parked car at an intersection, it seems prudent for a driver's safety that it be avoided.

In sum, we hold Agent Johnston's articulated suspicions unreasonable under the Fourth Amendment. Because there is no tenable argument that the search conducted after the illegal stop was sufficiently attenuated to purge it of the legal taint, we conclude that the court erred in denying defendant's motion to suppress. The conviction is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.