**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Marcelo GUILLEN–CAZARES,**
**Defendant–Appellant.**

**No. 92–2119.**

United States Court of Appeals,
Tenth Circuit.

March 22, 1993.

---

Judith A. Patton, Asst. U.S. Atty. (Don J. Svet, U.S. Atty., with her on the brief), Las Cruces, NM, for plaintiff-appellee.

Jana M. Miner, Asst. Federal Public Defender, Las Cruces, NM (Tova Indritz, Federal Public Defender, with her on the briefs), for defendant-appellant.

Before LOGAN, HOLLOWAY, and MOORE, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

Defendant Marcelo Guillen–Cazares was indicted on one count of possession with intent to distribute less than fifty kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). After the district court denied his motion to suppress evidence, he entered a conditional guilty plea. On appeal, the defendant argues the district court erred in denying the motion to suppress the evidence discovered in his vehicle. We reverse.

I.

On December 12, 1991, United States Border Patrol Agent Joel Nickels was operating the border patrol checkpoint station located on northbound Interstate 25 near Truth or Consequences, New Mexico. At approximately 10:25 p.m., Agent Nickels observed the headlights of two vehicles travelling north on Highway 181, a paved state highway which is visible from the checkpoint. In an effort to intercept the vehicles, Agent Nickels and another agent drove a marked border patrol car to Exit 83 and parked at the stop sign located at the intersection of I–25 and Highway 181.

Agent Nickels noticed the vehicles were travelling very close together. As the vehicles approached, Agent Nickels turned on his headlights to see the vehicles and the occupants. Agent Nickels testified the first car, a red Mercury, contained quite a few people and he did not recognize it as a local vehicle. The second car was a white Chrysler with two occupants in the front seat. In Agent Nickels' opinion, this car "appeared to be riding a little bit low."

The agents pulled onto Highway 181 and began following the cars at a distance. As the cars turned and entered I–25 south, the agents temporarily lost sight of them. Once on I–25, however, the agents caught up to the Chrysler. At this point, Agent Nickels noticed he could no longer see the passenger in the car. The agents stopped the Chrysler and radioed the checkpoint to request another unit's assistance to intercept the red Mercury.

Agent Nickels asked the defendant, who was driving the Chrysler, and the passenger if they were American citizens. The defendant produced a resident alien card, and the passenger responded he was an American citizen. The defendant then consented to a search of the trunk. When the defendant opened the trunk, Agent Nickels saw an air tank and a spare tire which did not appear to be the same size as the tires on the car. He removed the tire from the trunk, dropped it on the ground, and noticed it was "overly heavy" and did not bounce. Agent Nickels released some air from the tire and smelled marijuana. After arresting the defendant and the passenger, the agents discovered sixty pounds of marijuana in the tire and the car.

A federal grand jury indicted the defendant for possession with intent to distribute marijuana. He filed a motion to suppress, challenging the legality of both the stop and the search of his trunk.

At the suppression hearing, Agent Nickels testified[1] he had three years' experience as a border patrol agent at the Truth or Consequences checkpoint. Travelers can circumvent the checkpoint, which is located ninety-seven air miles from the border, by taking Highway 181. Agent Nickels stated he had arrested alien smugglers on Highway 181 on many occasions. He also explained that typically, in the winter months after dark, very little traffic trav-

---

1. Agent Nickels was the only witness to testify at the suppression hearing.

els on the roads near the checkpoint. He was not aware, however, whether agents had stopped other vehicles on Highway 181 on the night he arrested the defendant.

In his experience, Agent Nickels stated the presence of a number of passengers indicates the possibility the car is involved in alien smuggling. Because cars often drive north on Highway 181 to look over and determine if the checkpoint is open and then return south to pick up their loads, Agent Nickels did not find it unusual the defendant's car entered I–25 going south. Moreover, he testified, it is becoming more common for smugglers to use two vehicles in tandem with one of the vehicles acting as a scout or guide vehicle. He also noted border patrol agents have "run into quite a few cases lately where the guide vehicle will actually be behind the other one."

On cross-examination, however, Agent Nickels admitted a greater percentage of cars using Highway 181 to circumvent the checkpoint enter the interstate travelling north. When smugglers are operating with two cars, Agent Nickels testified, one car usually tries to circumvent the checkpoint and then goes back south to pick up the other car. This was the first time Agent Nickels watched two cars, presumably riding in tandem, turn south on I–25. He also stated he had observed a tandem situation where the lead car contained more passengers than the second car on only two previous occasions.

When asked to explain how he determined the Chrysler was riding a little low, Agent Nickels testified, "The rear end seemed to be lower than what I would consider normal." Defense counsel then inquired:

Q. Well, to you, what is normal?

A. A vehicle that appears to be riding level.

Q. So any vehicle that has some type of slant in it is always, in your mind, riding low?

A. I would say so, yes.

R. Vol. II, 29.

At the conclusion of the hearing, the district court found the agents possessed reasonable suspicion to stop the defen-

dant's car. The court also held the defendant voluntarily consented to the search of the trunk. The defendant entered a conditional guilty plea and received a sentence of twenty-one months' imprisonment followed by three years of supervised release.

## II.

■ On appeal, the defendant challenges the agents' reasonable suspicion to stop the car. Alternatively, even if the agents had reasonable suspicion for the stop, the defendant argues the search of the trunk exceeded the permissible scope of the stop and violated his Fourth Amendment rights. The controlling issue here, as we noted in *United States v. Miranda–Enriquez*, 941 F.2d 1081, 1083 (10th Cir.1991), is the validity of the initial stop. If we conclude the stop infringed on the defendant's Fourth Amendment rights, the search conducted after the stop was not sufficiently attenuated to purge it of the prior illegality.

■ In reviewing the denial of a motion to suppress, we must accept the district court's findings of fact unless clearly erroneous. *United States v. McKinnell*, 888 F.2d 669, 672 (10th Cir.1989) (citing *United States v. Cooper*, 733 F.2d 1360, 1364 (10th Cir.), *cert. denied*, 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984)). "The ultimate determination of reasonableness under the fourth amendment is, however, a conclusion of law that we review de novo." *Id.* (citation omitted).

Border patrol "officers on roving patrol may stop vehicles ... if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country." *United States v. Brignoni–Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 2581, 45 L.Ed.2d 607 (1975). "Stated alternatively, an investigatory stop is justified when an officer 'observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity is afoot.'" *United States v. Monsisvais*, 907 F.2d 987, 990 (10th Cir.1990) (quoting

*Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968)).

In *Brignoni–Ponce*, the Supreme Court articulated several factors border patrol agents may consider in determining whether reasonable suspicion exists to stop a car in the border area, including:

> (1) characteristics of the area in which the vehicle is encountered; (2) the proximity of the area to the border; (3) the usual patterns of traffic on the particular road; (4) the previous experience of the agent with alien traffic; (5) information about recent illegal border crossings in the area; (6) the driver's behavior, including any obvious attempts to evade officers; (7) aspects of the vehicle, such as a station wagon with concealed compartments; and (8) the appearance that the vehicle is heavily loaded.

*Monsisvais*, 907 F.2d at 990 (citing *Brignoni–Ponce*, 422 U.S. at 884–85, 95 S.Ct. at 2581–82). The essence of the reasonable suspicion determination "is that the totality of circumstances—the whole picture—must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981). While the officers may assess the facts in light of their own experience, "not every suspicion that is 'articulable' is reasonable." *Monsisvais*, 907 F.2d at 992.

■ In this case, the record establishes the road on which the defendant was travelling is used by alien smugglers to circumvent the Truth or Consequences checkpoint. Moreover, Agent Nickels testified very little traffic travels on the roads near the checkpoint at the time of day and year the agents spotted the defendant. Thus, the record before us concerning the characteristics of the area and the traffic patterns is more complete than the record in *Monsisvais*, 907 F.2d at 990–91, a case involving the same area of Highway 181. However, we must take note of our caution in *United States v. Sanders*, 937 F.2d 1495, 1501 (10th Cir.1991), *cert. denied*, —— U.S. ——,

112 S.Ct. 1213, 117 L.Ed.2d 451 (1992), that "[t]o claim suspicious circumstances based solely on the time of day an individual chooses to travel risks labeling all who travel on what some feel is an unusual hour as suspicious." *See Miranda–Enriquez*, 941 F.2d at 1084–85.

The existence of the two cars, proceeding closely together and turning south on I–25, does not evoke the same types of suspicions as other situations and maneuvers found in roving border patrol cases. *See Monsisvais*, 907 F.2d at 991. For instance, in *United States v. Pollack*, 895 F.2d 686, 687 (10th Cir.), *cert. denied*, 498 U.S. 985, 111 S.Ct. 520, 112 L.Ed.2d 532 (1990), we addressed what an agent described as "the classic alien-smuggling pattern." A pickup truck came to the Truth or Consequences checkpoint and the driver inquired as to the nearest gas station. When an agent directed the driver south, to Truth or Consequences, the pickup truck headed back south. Approximately forty-five minutes later, agents spotted the same pickup truck travelling north on old Highway 85 (Highway 181), followed closely by a large 1972 Buick with out-of-state license plates. The agent explained "the purpose of the lead car coming through the checkpoint is to determine if the checkpoint is open and to scout ways around the checkpoint." *Id.* We concluded this pattern, combined with the fact the Buick appeared heavily loaded and was apprehended between 3:00 and 3:45 a.m., gave rise to reasonable suspicion to stop the Buick.

Here, Agent Nickels did not testify he had seen either of the vehicles earlier in the evening. In fact, he admitted he had never encountered a situation where two vehicles drive north on Highway 181 and then turn south on I–25. He also noted the lead car usually contains fewer passengers than the second vehicle and most smugglers enter I–25 heading north. Based on these facts, we believe Agent Nickels' suspicion this was a tandem smuggling operation is not reasonable. Using his analysis, every instance of two vehicles travelling north on Highway 181 during the late evening hours would give rise to suspicion.

Relying on *United States v. Barbee,* 968 F.2d 1026 (10th Cir.1992), the government emphasizes Agent Nickels' testimony that the passenger's head disappeared between the time the agents began to follow the defendant's car and when they caught up to the car on I–25. The *Barbee* court found "[a]n agent's belief that passengers are ' "slouching down" to avoid detection' may create reasonable suspicion." 968 F.2d at 1028–29 (quoting *United States v. Leyba,* 627 F.2d 1059, 1061, 1063 (10th Cir.), *cert. denied,* 449 U.S. 987, 101 S.Ct. 406, 66 L.Ed.2d 250 (1980)). However, the passenger's actions in this case are distinguishable from the *Barbee* passengers' conduct.

In *Barbee,* when the agent's headlights lit up the car, he observed the passengers crouching down in an apparent effort to avoid detection. The court concluded "such behavior is suspicious conduct not clearly susceptible to unsuspicious interpretations." *Id.* at 1029. Here, Agent Nickels did not perceive the defendant or the passenger take any evasive action when he illuminated the car with his headlights. On the contrary, Agent Nickels did not see the passenger slouch down in response to the agents' actions. A person who slides down in a seat at some point after the agents spot the car is less suspicious and more susceptible to unsuspicious interpretations than the passengers who clearly acted in an evasive manner in *Barbee. See United States v. Garcia,* 732 F.2d 1221, 1224–25 n. 1 (5th Cir.1984) (nighttime passengers' change over several minutes to a more recumbent position is not unusual and is less suspicious than passengers appearing to slouch down as agents passed car) (citing *United States v. Orona–Sanchez,* 648 F.2d 1039, 1042 (5th Cir.1981)). Thus, when considering the totality of the circumstances, we will afford less weight to this factor than the *Barbee* court.

Finally, we think the suspicious inferences Agent Nickels drew from the fact the defendant's car was riding a little low cannot withstand rational analysis. In Agent Nickels' opinion, any car with some slant towards the rear is "riding low." To use this expansive definition and conclude it is a suspicious circumstance would risk subjecting scores of legitimate travellers to roving border stops.[2]

Viewing the totality of the circumstances, we are left to consider the fact the defendant was travelling at night on a known smuggling road, with one passenger, in a vehicle which slanted to the rear and was following a car with several passengers. These articulated facts, and the fact the passenger slouched down at some point after the car entered I–25 south, together with the rational inferences from the facts, do not reasonably warrant suspicion the defendant's vehicle was smuggling aliens or narcotics. Because the search of the defendant's trunk was not sufficiently attenuated to purge it of the legal taint, we hold the district court erred in denying the motion to suppress. The judgment of the district court is REVERSED, and the case is REMANDED.

---

2. We note the *Brignoni–Ponce* Court stated officers may consider the fact a vehicle is *heavily* loaded when determining whether there is rea-sonable suspicion to stop the car. 422 U.S. at 885, 95 S.Ct. at 2582.