UNITED STATES of America, Plaintiff,

v.

Christine A. GONZALES, Defendant.

Cr. No. 93–381 JP.

United States District Court,
D. New Mexico.

Nov. 19, 1993.

William D. Fry, Federal Public Defender's Office, Las Cruces, NM, for defendant.

Nellie A. Nava, pro se.

Kelly H. Burnham, U.S. Attorney's Office, D.N.M., Las Cruces, NM, for plaintiff.

## AMENDED MEMORANDUM OPINION AND ORDER

PARKER, District Judge.

The subject of this order is defendant's motion to suppress filed September 2, 1993. The parties presented evidence at a hearing on September 21, 1993, and at the request of defendant I personally observed defendant's truck, within the presence of each party's counsel, on October 12, 1993. After careful consideration of the applicable pleadings, facts and law I conclude that defendant's motion should be granted.

### BACKGROUND

On July 6, 1993, Border Patrol Agent Brian Lundquist[1] was stationed adjacent to Highway 11 near mile marker 12 conducting a routine "on-line" roving patrol watch. Highway 11 originates at the Mexico border, runs north and south, and is the only paved road in the area extending north from the border.[2] According to Agent Lundquist, Highway 11 is a major access road for alien smuggling traffic from Mexico; however, he admitted that Highway 11 is predominately used for legitimate traffic purposes. Agent Lundquist was positioned on the east side of the highway in a marked Border Patrol Ford Bronco with overhead lights, angled so that he was facing in a southwesterly direction. At roughly 11:50 a.m. a north-bound 1984 white GMC 1/2 ton truck approached Agent Lundquist's position. The subsequent encounter between the truck's driver, Christine Gonzales, and Agent Lundquist gives rise to the current dispute.

Agent Lundquist saw defendant's truck approaching for approximately one mile, and was able to ascertain that the truck contained a single occupant when the truck was about 100 yards away. At 20 to 30 yards distance the agent was able to determine that the occupant was a female. Agent Lundquist was able to observe the driver through the truck's windshield as the truck, travelling at 55–60 MPH, passed with its driver 20–30 feet in front of the point at which Agent Lundquist was seated inside his vehicle. (I recreated this situation using defendant's truck and a Chevy Blazer similar to Agent Lundquist's Bronco. Positioning the vehicles at approximately the same distance as on July 6th I was able to determine that it is possible to see the expression on the driver's face under these circumstances.) The agent testified that when the driver saw him, she had a "shocked" or "concerned" expression on her face, and that the defendant's eyes "were as big as pie plates." The agent also observed that the truck's bed was covered with a snap down tarpaulin concealing what, if anything, was being transported. Agent Lundquist proceeded to exit his position and follow defendant's truck.

Agent Lundquist noticed that defendant applied the brakes[3] and decreased the truck's speed after he began to follow her; however, the agent also testified that it was not unusual for drivers to reduce speed when they notice a Border Patrol vehicle is behind them. The truck continued to travel below the posted speed limit of 55 MPH even though the road conditions did not warrant such precautionary measures. Moreover, Agent Lundquist testified that the truck appeared to be riding low in the rear indicating that it was carrying a considerable amount of weight.[4] (My observation of defendant's

---

1. Agent Lundquist has been employed with the Border Patrol since 1988 and has handled in excess of 100 cases.

2. The closest north-south paved road to the east of Highway 11 is approximately 75 miles away; the closest north-south paved road to the west is about 50 miles distant.

3. Agent Lundquist noticed that when the truck's driver applied the brakes, the bed of the truck rocked forward. This indicated to Agent Lundquist that the truck's bed was heavily loaded.

4. Agent Lundquist believed the truck was carrying several hundred pounds, and thought that illegal aliens were lying in the truck bed underneath the tarpaulin.

truck did not result in a conclusion similar to Agent Lundquist's. It appeared to me that the truck, unloaded, does not ride low in the rear, but in fact tilts forward with the front end lower. Even after placing approximately 200 pounds in the truck's bed, the equivalent of the weight of marijuana seized, the rear of the truck still did not appear to drop significantly, and at most the rear then appeared to sit level with the front.)

Agent Lundquist also observed that the truck drifted within the traffic lane as he followed it. Although the truck did not cross the center line, Agent Lundquist believed this erratic driving indicated the defendant was concentrating on watching him through her rear-view mirror and was more concerned about the presence of his following marked vehicle than she was with watching the road. Based on these factors Agent Lundquist believed he had reasonable suspicion to stop the truck and question the driver.[5]

When Agent Lundquist approached the truck the defendant appeared to be visibly shaken and her hands were trembling. Although visibly nervous, defendant cooperated with Agent Lundquist and answered his questions concerning her citizenship. Defendant was unable to produce any documentation to confirm that she was a United States citizen, but Agent Lundquist was satisfied that defendant adequately proved her citizenship through a series of questions and answers.[6] Once defendant's citizenship was established, Agent Lundquist continued to question defendant regarding the ownership and contents of the truck. Agent Lundquist had previously conducted a license check on

the truck while in pursuit and determined that Jose Carreon was the listed owner.[7] Based on this information, Agent Lundquist was aware of an inconsistency when defendant claimed that Francisco Luna was the truck's owner. Agent Lundquist did not confront defendant regarding this inconsistency but instead asked defendant what she was transporting under the tarpaulin, and whether she would consent to a search of the truck. Defendant claimed that nothing was in the bed of the truck, and furthermore consented to Agent Lundquist's search request. After pulling back a corner of the tarpaulin, Agent Lundquist saw several bundles situated in the truck's bed, which based on his experiences, he determined emitted a strong odor of marijuana. Defendant was then taken into custody, read her *Miranda* rights, and transported to the nearest Border Patrol station.

## DISCUSSION

 The constitutionality of any Border Patrol stop is subject to Fourth Amendment scrutiny. Specifically, "officers on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion" that the vehicles contain illegal aliens or contraband. *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). To determine what constitutes a reasonable suspicion, an officer must look at the totality of the circumstances taken in consideration with the officer's own personal experiences in detecting illegal activity. *Brignoni–Ponce*, 422 U.S. at 885, 95 S.Ct. at

---

**5.** Agent Lundquist testified that the following factors gave rise to reasonable suspicion: (1) Highway 11 is a notorious drug and alien smuggling route; (2) defendant had a shocked expression on her face when she first saw Agent Lundquist; (3) a tarp covered the bed of the truck; (4) defendant applied brakes when Agent Lundquist began to follow; (5) the truck travelled at a reduced speed while followed; (6) the truck weaved within the traffic lane while followed. In addition, Agent Lundquist knew (7) the truck was travelling northbound from the direction of the border with Mexico; (8) the point at which he observed the truck was only eleven miles north of the border; and (9) the only United States community between his location and the

border was the very small town of Columbus, New Mexico.

**6.** Agent Lundquist established that defendant was a United States citizen through questions regarding where she was born, where she lived, and where she had attended school.

**7.** Prior to pulling over defendant, Agent Lundquist ran a license check to determine the identity of the owner and whether the truck had been reported stolen. The agent received the information on the license check while he was conducting his initial questioning of defendant. The truck had not been reported stolen.

2582; *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). "Based upon the whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Cortez,* 449 U.S. at 417–18, 101 S.Ct. at 695.

At the time he stopped defendant's vehicle, Agent Lundquist had knowledge of the following factors: (1) Highway 11 is a notorious drug and alien smuggling route; (2) the point of the stop was in close proximity to the border; (3) the defendant had a "shocked" look on her face upon noticing Agent Lundquist; (4) a tarpaulin covered the back of the truck; (5) the defendant applied the brakes when Agent Lundquist began to follow her; (6) the truck travelled at a reduced speed while being followed; (7) the truck weaved within the traffic lane while being followed; (8) the defendant was travelling northbound from the direction of the border; and (9) only one very small town in the United States on Highway 11 was between Agent Lundquist and the border.

The United States Supreme Court has outlined certain "specific articulable facts" that may be considered in determining whether reasonable suspicion exists justifying a roving patrol stop:

(1) the characteristics of the area in which the vehicle is stopped;

(2) patterns of traffic on the road;

(3) proximity to the border;

(4) previous experiences with alien trafficking in the area;

(5) information about recent border crossings;

(6) attempts to evade detection;

(7) appearance of the vehicle;

(8) appearance and behavior of the driver and passengers;

(9) other relevant information.

*United States v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).

■ A careful review of the sum of the factors relied upon by Agent Lundquist, in light of the *Brignoni–Ponce* standard and factors, will illustrate that the agent did not have sufficient reasonable suspicion under

Fourth Amendment guidelines to stop and question the defendant. First, Agent Lundquist placed considerable weight on the fact that Highway 11 is a notorious smuggling route for drugs and illegal aliens. Assuming arguendo that Highway 11 does have a reputation for illegal activity, the facts in the present case do not support the conclusion that illegal activities were under way. Defendant was travelling at mid-day on a road that Agent Lundquist admitted was predominately used for legitimate traffic. *See United States v. Abdon–Limas,* 780 F.Supp. 773, 777 (D.N.M.1991) ("There is nothing in the record of this case which provides a basis to conclude that a vehicle's presence on 185 at mid-day is at all unusual, much less suggestive of criminal conduct.") Unlike the facts in recent Tenth Circuit opinions, the defendant was not attempting to utilize a seldom used back road to avoid detection. *United States v. Miranda–Enriquez,* 941 F.2d 1081 (10th Cir.1991); *United States v. Monsisvais,* 907 F.2d 987 (10th Cir.1190). The defendant's use of Highway 11, the only paved north-south road from the border within many miles, during the middle of the day is not indicative of illegal activity, even if defendant was travelling away from the border, and is not objectively different from the majority of legitimate traffic that traverses the Highway. Although I do not place significant weight on defendant's use of Highway 11, I am cognizant of the defendant's close proximity to the border when she was detained. *See United States v. Venzor–Castillo,* 991 F.2d 634 (10th Cir.1993). The probative weight of defendant's proximity to the border will be considered along with the other legitimate factors used to determine whether, under the totality of the circumstances, Agent Lundquist had reasonable suspicion to detain defendant.

■ Agent Lundquist testified that the truck appeared to be riding low in the rear, and he believed that the tarp covering the truck's bed concealed the presence of illegal aliens. The objective reasonableness of this observation must be drawn into question based upon my own observation of defendant's truck. The rear of defendant's truck does not naturally ride low but in fact ap-

pears to be elevated, and remains level with the front even after placing 200 pounds of weight in the truck's bed. Agent Lundquist's observation of the truck's low riding rear does not provide a sufficient ground to support an *"objective* basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez,* 449 U.S. at 417–418, 101 S.Ct. at 695 (emphasis added). Considering that the truck was not objectively "riding low" the fact that the truck's bed was covered with a tarpaulin has limited, if any, independent significance. The tarpaulin was snapped down over the truck's bed and was level with the sides of the truck. There were no visible protrusions or shapes evident under the tarp as the truck passed Agent Lundquist's position. In fact the use of the tarpaulin was no different than the legitimate use it was designed to perform. It is hard to justify an inference that illegal activities are being conducted when the only indicia is the proper, legal use of a tarpaulin. *United States v. Monsisvais,* 907 F.2d at 993 ("Plainly, not every suspicion that is 'articulable' is reasonable."). Therefore, I find that the fact the truck's bed was concealed with a tarpaulin has no probative value under the totality of the circumstances in helping to establish that reasonable suspicion existed. *Compare United States v. Merryman,* 630 F.2d 780, 784 (10th Cir.1980) ("The tarp in the back of the truck which covered *uneven* objects reasonably suggested to the officer that there might be illegal aliens under the tarp.") (emphasis added).

■ Finally, Agent Lundquist testified that defendant drove in an erratic manner which signified the possibility of criminal activity. Specifically, the defendant reduced the truck's speed to a rate below the posted limit when she noticed that Agent Lundquist was following her, and she also drifted within her traffic lane. These facts indicate that defendant was aware of Agent Lundquist's presence, but they do not clearly indicate that defendant was engaged in illegal activity. Agent Lundquist admitted that it was not unusual for a driver to reduce a vehicle's speed upon noticing that a Border Patrol vehicle is following. Furthermore, it is perfectly logical that a vehicle may drift within a traffic lane when the vehicle's driver is look-

ing into the rear view mirror focusing attention on a trailing Border Patrol vehicle. Although defendant drifted within her traffic lane, as Agent Lundquist testified, she did not cross over into oncoming traffic. The Tenth Circuit has required far more erratic driving behavior to support an officer's reasonable suspicion. *See United States v. Pollack,* 895 F.2d 686 (10th Cir.1990) (use of a "scout" car in a classic alien smuggling pattern); *Merryman,* 630 F.2d at 781 (driver made a U-turn just prior to reaching a permanent checkpoint). Based on Agent Lundquist's testimony that it is common for drivers to reduce speed when being followed by Border Patrol vehicles, and the minor nature of alleged "erratic" driving behavior of defendant, I find it difficult to ascribe much weight to these observations in determining whether reasonable suspicion existed to stop and detain defendant. *See United States v. Monsisvais,* 907 F.2d 987 (10th Cir.1990).

■ Although Agent Lundquist testified that several indicia gave rise to reasonable suspicion, and these indicia are among those enumerated in *Brignoni–Ponce,* these factors are easily distinguishable in this particular case for the reasons discussed herein. Looking at the totality of circumstances, Agent Lundquist could justifiably rely on only the following particularized factors in establishing reasonable suspicion to detain defendant: (1) the "shocked" expression on defendant's face; (2) the close proximity to the border; and (3) the fact that only one small town stood between Agent Lundquist's position and the border. Proximity to the international border is unquestionably a factor to consider; however, it must be supported with other viable elements to give rise to reasonable suspicion. A driver's "shocked" expression at seeing a marked law enforcement vehicle is certainly not unheard of, nor automatically suspicious, regardless of whether it is within twelve miles of the Mexico border. *Compare United States v. Barbee,* 968 F.2d 1026 (10th Cir.1992) (fact that passengers "slouched" down after Border Patrol Agents shined high beam headlights into the back seat of defendant's car gave rise to reasonable suspicion). I cannot justify Agent Lundquist's detention of defendant on the

tenuous grounds presented. I conclude that Agent Lundquist did not have reasonable suspicion under the totality of the circumstances to conduct an investigatory stop of defendant's truck when the sum of relevant, particularized factors consisted of objectively legal conduct that happened to occur in close proximity to the border. *See United States v. Guillen–Cazares,* 989 F.2d 380 (10th Cir. 1993); *United States v. Miranda–Enriquez,* 941 F.2d 1081 (10th Cir.1991); *United States v. Monsisvais,* 907 F.2d 987 (10th Cir.1990); *United States v. Abdon–Limas,* 780 F.Supp. 773 (D.N.M.1991). Because Agent Lundquist did not have reasonable suspicion to make an investigatory stop, the evidence seized and defendant's subsequent statements should be suppressed.

IT IS THEREFORE ORDERED THAT defendant's motion to suppress is GRANTED.