UNITED STATES of America, Plaintiff,

v.

German ALDANA–ROLDAN, Defendant.

No. 96–6032–CR.

United States District Court,
S.D. Florida.

May 20, 1996.

Jeffrey Sloman, Asst. U.S. Atty., Ft. Lauderdale, FL, for Plaintiff.

Martin Bidwill, Asst. Federal Public Defender, Pompano Beach, FL, for Defendant.

## ORDER

GONZALEZ, District Judge.

This Cause has come before the Court upon Defendant's Objections to Magistrate Judge's Report & Recommendation, filed on May 13, 1996.

Defendant in this case is charged with being a deported alien who has entered or is present in the United States without the consent of the Attorney General in violation of 8 U.S.C. § 1326. On April 8, 1996, Defendant filed a motion to suppress which was referred to Magistrate Judge Snow. In his motion, Defendant challenged the legality of the stop of a vehicle in which he was a passenger, and sought to suppress all evidence obtained as the result of that stop (including the identification of Defendant and statements made by him). After holding a hearing on Defendant's motion, the Magistrate Judge found that the arresting officer, Border Patrol Agent Michael Galvan, lacked the requisite level of suspicion needed to stop the vehicle. Report and Recommendation at 4, citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574,

45 L.Ed.2d 607 (1975); *United States v. Williams,* 876 F.2d 1521, 1524 (11th Cir. 1989); *United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Accordingly, the Magistrate Judge recommended that "all evidence obtained following the stop of the van ... be suppressed."

The Government then moved for clarification to determine whether the Report and Recommendation contemplated the suppression of evidence pertaining to Defendant's identity, together with his fingerprints and the record of his previous arrest and deportation. Based upon *United States v. Guzman–Bruno,* 27 F.3d 420, 421 (9th Cir.1994), the Magistrate Judge ruled that it did not. Defendant now objects to the Magistrate Judge's Report and Recommendation, as amended by her Order of May 9, 1996.

■■■■ As an initial matter, the Court accepts and adopts the Magistrate Judge's finding that Agent Galvan's stop of the vehicle in which Defendant traveled was unlawful under *Terry v. Ohio.* As a general matter, all evidence obtained as a result of an illegal stop or arrest is inadmissible. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). This general rule, however, does not seem to apply equally when a defendant seeks to suppress his own identity. See *Guzman–Bruno,* and cases cited therein.

Defendant attempts to distinguish *Guzman–Bruno,* notwithstanding the great similarity between the facts in that case and this. Defendant points out that the defendant in *Guzman–Bruno* was in plain view before he was stopped and questioned by the police. In contrast, Agent Galvan did not know Defendant was in the back of the van before he made his illegal stop. Thus, Defendant asserts, the Government would have no indication of Defendant's presence in this country, let alone his identity, had it not been for Galvan's stop. The Court finds this distinction unpersuasive. The crucial element of the holding in *Guzman–Bruno* is that the identity of the defendant, which was only ascertained after he was unlawfully detained, could not be suppressed. Thus, the case stands for the proposition that there are some facts which simply are not subject to suppression; and if a defendant's identity cannot be suppressed, there is no reason that evidence of his presence can.

■■■■ In light of *Guzman–Bruno* and the relevant opinions of the Supreme Court, the Court holds that while evidence obtained as a result of the unlawful stop in this case will be suppressed, evidence obtained from other sources regarding Defendant's identity and previous record shall be admitted at trial. This position is consistent with the holdings in *Guzman–Bruno* and *INS v. Lopez–Mendoza,* 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). It has always been the position of the Supreme Court that the manner in which a Defendant is brought before a court is irrelevant to considerations of due process. *See Ker v. Illinois,* 119 U.S. 436, 444, 7 S.Ct. 225, 229, 30 L.Ed. 421 (1886), *Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952). Moreover, as stated by the Court in *Lopez–Mendoza,* "[t]he 'body' or identity of a defendant or respondent in a *criminal* or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *Id.,* at 1039, 104 S.Ct. at 3483–84 (emphasis added).[1] Thus, "there is no sanction to be applied when an illegal arrest only leads to discovery of the man's identity and that merely leads to the official file or other independent evidence" being brought before the Court. *Guzman–Bruno,* at 442 (citations omitted). Accordingly, the Government is free to prove Defendant's identity so long as it can do so without relying upon the information it obtained from Agent Galvan's unlawful stop.

The Court has reviewed the motion and the record, and being otherwise duly advised, it is hereby:

**ORDERED** and **ADJUDGED** that Defendant's Objections to the Report and Recom-

---

1. Defendant's argument *Lopez–Mendoza* is not controlling because "that case addressed whether an unlawful *arrest* [as opposed to a "stop"] triggers the Exclusionary Rule ..." is rejected by this Court. The Court in *Terry v. Ohio* made no such distinction. Instead, it held that "[i]t is quite plain that the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime—'arrests' in traditional terminology." 392 U.S. at 16, 88 S.Ct. at 1877. Thus, the Exclusionary Rule applies equally to suppress evidence that has been obtained through either an unlawful arrest, or "stop" as defined by *Terry.*

mendation of the Honorable Lurana S. Snow, as amended by her Order of May 9, 1996, are **OVERRULED,** and this Court ratifies, affirms, and adopts the Report and Recommendation as its own Order.

DONE and ORDERED.

### REPORT AND RECOMMENDATION

SNOW, United States Magistrate Judge.

THIS CAUSE is before the Court on the defendant **German Aldana–Roldan's** Motion to Suppress (filed April 8, 1996) which was referred to United States Magistrate Judge, Lurana S. Snow, for report and recommendation. The defendant challenges the legality of the stop of the vehicle in which he was a passenger, and seeks to suppress all evidence obtained as the result of that stop (including the identification of the defendant and statements made by him). An evidentiary hearing was held on this motion on April 30, 1996.

### I. STATEMENT OF FACTS

United States Border Patrol Agent Michael Galvan testified that during the morning of February 29, 1996, he was positioned near the intersection of Interstate 75 (I–75) and Pines Boulevard in Broward County, Florida. Agent Galvan, who was in a marked Border Patrol car, had information that there were illegal aliens working at a nearby construction site. Agent Galvan observed the traffic heading west on I–75 toward the construction site, and noticed a white van with a driver and at least two passengers. The occupants of the van appeared to be startled or agitated when they noticed Agent Galvan's car.

Agent Galvan decided to follow the van as it proceeded west. He drove behind it for a short time, then pulled alongside the van. As he did so, he observed the van slow down, and noticed that the front passenger was sitting "stoically" and staring straight ahead. Agent Galvan also observed an individual lean forward from behind the door panel and look out at Agent Galvan. At this time, the van was weaving within the lane, but was not exceeding the speed limit.

After approximately one-quarter mile, Agent Galvan turned on his lights and stopped the van. He inquired in Spanish whether the occupants of the van had "pa-

pers" (referring to Immigration documents). The driver of the van was able to produce his documents, but the three passengers (including the defendant) could not. Agent Galvan handcuffed the passengers and transported them to his office, where he determined that the defendant had been deported from the United States.

Agent Galvan advised the defendant of his *Miranda* rights, and questioned him regarding his Immigration status. The defendant admitted that he had re-entered the United States after deportation, without first obtaining the permission of the Attorney General.

On cross examination, Agent Galvan conceded that at the time he stopped the van, his only suspicion was that the occupants could be illegal aliens. There was no evidence of any other criminal conduct.

The defendant called as a witness Jesus Enrique Cardona, who testified that he was the driver of the van that was stopped by Agent Galvan on February 29, 1996. He stated that the defendant had been seated on a bucket behind the passenger in the front seat. Mr. Cardona identified photographs of the van (Defendant's Exhibits 1–10), which depict a white van with tinted windows and no back seats.

According to Mr. Cardona, neither the defendant nor the front passenger did anything in response to observing Agent Galvan's car. Mr. Cardona noticed the agent's car when the lights were turned on, but did not know what type of law enforcement vehicle it was. Mr. Cardona stated that Agent Galvan stayed behind him and did not pull alongside the van at anytime prior to the stop.

### II. RECOMMENDATIONS OF LAW

The parties agree that a police officer may briefly detain an individual if he has a reasonable, articulable suspicion, based on objective facts, that the person has been, or is about to be engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Likewise, a vehicle may be stopped if the officer has a reasonable suspicion that its occupants are violating the law. *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Williams*, 876 F.2d 1521, 1524 (11th Cir.1989). The requisite

level of suspicion must be more than a hunch, bearing "some minimal level of objective justification" based on the totality of the circumstances. *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

In the instant case, there were no objective facts from which Agent Galvan could infer that the driver or passengers of the van were engaged in criminal activity. Agent Galvan observed no violation of the traffic laws, but initially he saw the occupants of the van look at his vehicle, with apparent recognition of who he was. Later he saw the van slow down and weave within its lane, while the front passenger sat still and stared straight ahead.

The undersigned finds that the conduct of the vehicle and its passengers is consistent with the behavior one might expect from an ordinary citizen who knows he is being followed by a police vehicle. The observations of Agent Galvan did not give rise to the requisite level of suspicion needed for a stop of the vehicle under *Terry* and its progeny. *See, United States v. Chavez–Villarreal*, 3 F.3d 124, 126–127 (5th Cir.1993); *United States v. Guillen–Cazares*, 989 F.2d 380 (10th Cir.1993). Accordingly, all evidence obtained following the stop of the van should be suppressed.

### III. *CONCLUSION*

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that the Motion to Suppress be GRANTED.

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 30th day of April, 1996.

### *ORDER*

THIS CAUSE is before the Court on Government's Motion to Clarify Magistrate's R & R Dated April 30, 1996 (filed May 6, 1996), and was referred to United States Magistrate Judge, Lurana S. Snow for disposition. On April 30, 1996, the undersigned magistrate judge issued a report which recommended that the defendant's motion to suppress be granted, based on the illegal stop of the van in which the defendant was a passenger. The Government seeks clarification of that recommendation, to ascertain whether it

contemplated the suppression of evidence pertaining to the defendant's identity, together with his fingerprints and the record of his previous arrest and deportation.

The Government relies on *United States v. Guzman–Bruno*, 27 F.3d 420, 421 (9th Cir. 1994) for the proposition that "a defendant's identity need not be suppressed merely because it is discovered as the result of an illegal arrest and search." In that case, the defendant was charged with a violation of 8 U.S.C. § 1326, the same offense alleged in the instant indictment. The undersigned finds that there is no distinction between the operative facts of *Guzman–Bruno* and those in the case *sub judice.*

In the absence of any contrary authority from this Circuit or any other, the Ninth Circuit precedent in *Guzman–Bruno* appears to be controlling. [A copy of that decision is attached to this order.] Accordingly, it is hereby

ORDERED AND ADJUDGED that the Government's Motion to Clarify is GRANTED, and the Report and Recommendation issued April 30, 1996 is amended, as follows: Testimony pertaining to the defendant's identity, as well as fingerprints and records of his previous deportation, should not be suppressed as a result of the illegal stop and arrest of the defendant in the instant case.

DONE AND ORDERED at Fort Lauderdale, Florida, this 10th day of May, 1996.

### APPENDIX

27 F.3d 420

UNITED STATES of America, Plaintiff–Appellee,

v.

Filiberto GUZMAN–BRUNO, Defendant–Appellant.

No. 93–50376.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 11, 1994.

Decided June 21, 1994.

As Amended Sept. 23, 1994.

Defendant was convicted in the United States District Court for the Central District

of California, Wm. Matthew Byrne, Jr., Chief Judge, of being a deported alien present in the United States, and he appealed. The Court of Appeals, Wallace, Chief Judge, held that: (1) fact that defendant's arrest was illegal did not require suppression of evidence of defendant's identity; (2) offense of being deported alien present in the United States is continuing offense for purposes of determining which version of Sentencing Guidelines applies; and (3) it was plain error to sentence defendant to period of supervised release which exceeded statutory maximum.

Affirmed in part; vacated and remanded in part.

**1. Criminal Law ⟞394.1(3)**

Fact that defendant's arrest was unlawful did not require suppression of evidence of defendant's identity in prosecution for being deported alien; since government would still be able to prove that defendant was present in the United States merely by virtue of officer's identification of him, it did not matter whether the arrest was illegal. Immigration and Nationality Act, § 276, 8 U.S.C.A. § 1326; U.S.C.A. Const.Amend. 4.

**2. Criminal Law ⟞394.4(9)**

"Body" or identity of defendant is never itself suppressible as fruit of unlawful arrest. U.S.C.A. Const.Amend. 4.

**3. Criminal Law ⟞1023(11)**

District court's discretionary decision not to depart downward from sentence recommended under Sentencing Guidelines is unreviewable. U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.App.

**4. Constitutional Law ⟞203**

Ex post facto clause prohibits retrospective imposition of punishment if it disadvantages the offender, such as when sentencing provision has been increased between time offense is committed and time of sentencing; in such case, district court applied version of Sentencing Guidelines in effect at time crime was committed. U.S.C.A. Const. Art. 1, §§ 9, cl. 3, 10, cl. 1; U.S.S.G. § 1B1.11(a), (b)(1), 18 U.S.C.A.App.

**5. Criminal Law ⟞1237**

Offense of being deported alien found in the United States was a "continuing offense" for purposes of determining which version of Sentencing Guidelines applied. Immigration and Nationality Act, § 276, 8 U.S.C.A. § 1326; U.S.C.A. Const. Art. 1, §§ 9, cl. 3, 10, cl. 1; U.S.S.G. § 1B1.11(a), (b)(1), 18 U.S.C.A.App.

See publication Words and Phrases for other judicial constructions and definitions.

**6. Criminal Law ⟞982.7**

It is plain error to sentence defendant to term of supervised release which exceeded statutory maximum. Immigration and Nationality Act, § 276(b)(2), 8 U.S.C.A. § 1326(b)(2); 18 U.S.C.A. §§ 3559(a)(3), 3583(b)(2).

---

Angel Navarro, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant.

Daniel P. Collins, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Appeal from the United States District Court for the Central District of California.

Before: WALLACE, Chief Judge,
FARRIS and KLEINFELD, Circuit Judges.

Opinion by Chief Judge WALLACE.

WALLACE, Chief Judge:

Guzman–Bruno entered a conditional guilty plea to being a deported alien found in the United States in violation of 8 U.S.C. § 1326 and was sentenced to 60 months' imprisonment followed by a 5 year term of supervised release. Guzman–Bruno appeals from his sentence as well as from the district court's denial of his motion to suppress his identity as the fruit of an illegal arrest. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm in part and vacate and remand in part.

I

On November 20, 1992, Immigration and Naturalization Service (INS) agents were stationed in a van in Los Angeles preparing

to execute a warrant for specific criminal suspects. The agents observed Guzman–Bruno, who was not named in the warrant, through binoculars. Suspicious because of his attire and the location where he was standing, the agents approached him, patted him down, and then asked him questions, including his name and where he was born. Based on his responses, the agents suspected he was in the country illegally, and took him into administrative custody in preparation for deportation. Later that day, Guzman–Bruno was interviewed at the INS office where he admitted to prior drug convictions and deportations. He was not advised of his *Miranda* rights until November 24 when he was once again interviewed and again admitted to previous deportations.

Guzman–Bruno was subsequently indicted under 8 U.S.C. § 1326(a), (b)(1), and (b)(2), for being found in the United States after having been deported following a conviction for an aggravated felony. He moved the district court to suppress all evidence obtained as a result of his seizure on November 20, which he argued was illegal. The district court granted the motion in part and denied it in part. The court held that the seizure constituted an illegal arrest, and that all of Guzman–Bruno's statements, with the exception of the initial admission of his name, were fruits of the illegal arrest. The district court also suppressed all of the statements made during the two interviews because he was not advised of his *Miranda* rights before the first interview, and the second interview was tainted by the first. However, under the independent source doctrine, the court did not suppress records of the preexisting criminal convictions or deportations. With the fact of his identity and his prior record not suppressible, Guzman–Bruno entered a conditional plea of guilty, reserving the right to appeal the partial denial of his motion to suppress.

## II

■ Guzman–Bruno argues that the district court should have suppressed all evidence of his identity learned in connection with the illegal arrest. Because the govern-

ment does not contest the district court's ruling that the arrest was illegal, we assume for purposes of our analysis that it was illegal. We review de novo the denial of a motion to suppress. *United States v. Khan,* 993 F.2d 1368, 1375 (9th Cir.1993). We review the district court's factual findings for clear error. *United States v. Negrete–Gonzales,* 966 F.2d 1277, 1282 (9th Cir.1992).

■ A defendant's identity need not be suppressed merely because it is discovered as the result of an illegal arrest or search. "[T]here is no sanction to be applied when an illegal arrest only leads to discovery of the man's identity." *Hoonsilapa v. INS,* 575 F.2d 735, 738 (9th Cir.) (*Hoonsilapa*), modified by, 586 F.2d 755 (9th Cir.1978). "The 'body' or identity of a defendant ... is never itself suppressible as a fruit of an unlawful arrest." *INS v. Lopez–Mendoza,* 468 U.S. 1032, 1039, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778 (1984); *see also United States v. Foppe,* 993 F.2d 1444, 1449 (9th Cir.) (suppression of incidental observations by police, such as appearance, would not have deterrent effect on unlawful police activity), *cert. denied,* 510 U.S. 1017, 114 S.Ct. 615, 126 L.Ed.2d 579 (1993). These cases clearly foreclose Guzman–Bruno's attempt to suppress the fact of his identity.

We have applied the above rule specifically in the context of a prosecution under 8 U.S.C. § 1326, the statute which Guzman–Bruno was charged with violating. In *United States v. Orozco–Rico,* 589 F.2d 433 (9th Cir.1978), *cert. denied,* 440 U.S. 967, 99 S.Ct. 1518, 59 L.Ed.2d 783 (1979), the defendant complained that his due process rights were violated when the government deported witnesses before he could obtain their testimony to contest the legality of his arrest. We held that it did not matter whether or not his arrest was illegal, since the government would still be able to prove that he was present in the United States merely by virtue of the officer's identification of him. An illegal arrest would not serve to suppress his identity since, " 'there is no sanction to be applied when an illegal arrest only leads to discovery of the man's identity and that merely leads to the official file or other independent evidence.' " *Id.* at 435, *quoting*

*Hoonsilapa,* 575 F.2d at 738. Thus, the district court did not err when it held that neither Guzman–Bruno's identity nor the records of his previous convictions and deportations could be suppressed as a result of the illegal arrest.

### III

■ Guzman–Bruno brings two separate challenges to his sentence. First, he argues that the district court should have departed downward and only sentenced him to 2 years' imprisonment for the offense of illegal reentry. Upon his deportation in 1990, Guzman–Bruno was given and asked to sign INS Form I–294 which erroneously stated that he would be subject to no more than 2 years' imprisonment if he returned illegally. In fact, as of 1988, an alien who, like Guzman–Bruno had previously committed an aggravated felony, was subject to a maximum of 15 years' imprisonment. His argument is foreclosed due to our decision in *United States v. Ullyses–Salazar,* 28 F.3d 932, 935–36 (9th Cir.1994).

■ Second, Guzman–Bruno argues that the district court applied the wrong version of the Sentencing Guidelines. Normally, a defendant is sentenced under the version of the Guidelines in effect at the date of sentencing unless barred by the ex post facto clause. U.S.S.G. § 1B1.11(a), (b)(1). The ex post facto clause prohibits the retrospective imposition of punishment if it disadvantages the offender, such as when a sentencing provision has been increased between the time the offense is committed and the time of sentencing. *See Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351, 360 (1987). In such a case, the sentencing court applies the version of the Guidelines in effect at the time the crime is committed. U.S.S.G. § 1B1.11(b)(1). We review the legality of a sentence de novo. *United States v. Fine,* 975 F.2d 596, 599 (9th Cir. 1992) (en banc).

■ Guzman–Bruno contends that his crime was committed when a more lenient version of the Guidelines was in effect, and thus use of the Guidelines in effect at the time of sentencing violates the ex post facto clause. He argues that he committed the offense of being a deported alien found in the United States in 1990 when he reentered the United States shortly after his deportation and reported to his state parole officer under an alias. He urges us to hold that he was "found" in the United States in 1990, and this is the date when his offense was committed, rather than the date in November 1992 when he was discovered by INS agents.

The district court was correct to count the date Guzman–Bruno was arrested by INS agents as the day that he committed the offense of being a deported alien found in the United States under 8 U.S.C. § 1326. A violation of 8 U.S.C. § 1326 for being found in the United States after a prior deportation is a continuing offense which continues so long as the alien remains in the country. *See United States v. Rincon–Jimenez,* 595 F.2d 1192, 1194 (9th Cir.1979). Guzman–Bruno continued to violate the statute until 1992 when the INS arrested him. Thus, application of the more recent Sentencing Guidelines does not violate the ex post facto clause.

Guzman–Bruno argues that even though a violation of 8 U.S.C. § 1326 is a continuing offense, immigration authorities should not be allowed unlimited discretion in establishing the date on which a violation is complete for sentencing purposes. He argues that treating the offense as continuing for sentencing purposes could allow authorities to wait to prosecute until penalty provisions have been increased. He has cited no authority for the proposition that unless authorities arrest as soon as they know of the crime, the sentence is limited to what it originally would have been. The statute makes it a crime for the deportee to be "at any time found in" the United States, as well as to enter the United States, so presence at any time subsequent to the entry is a crime subject to the penalties then in effect.

Because Guzman–Bruno's crime continued until he was found by the INS, the district court properly rejected his argument that use of the Guidelines in effect at sentencing violated the ex post facto clause.

## IV

The government contends that the 5 years of supervised release time to which Guzman–Bruno was sentenced exceeds the statutory maximum and asks us to remand so that the district court can correct the error. The government is correct. Guzman–Bruno's offense under 8 U.S.C. § 1326(b)(2) carried a maximum term of imprisonment of 15 years, which is a Class C felony according to 18 U.S.C. § 3559(a)(3). A defendant convicted of a Class C felony may be sentenced to no more than 3 years of supervised release. 18 U.S.C. § 3583(b)(2). The 5 year term imposed by the district court exceeds this statutorily authorized term and constitutes plain error. We vacate this part of the sentence and remand to the district court for the limited purpose of setting a term of supervised release within the statutorily permitted range.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.